# United States Tax Court

T.C. Memo. 2026-9

DIEGO E. SALAZAR,
Petitioner

v.

COMMISSIONER OF INTERNAL REVENUE,
Respondent

————

Docket No. 14285-23L.                    Filed February 3, 2026.

————

*Hugh G. Jasne*, for petitioner.

*Gennady Zilberman*, *Rossana Gallego-Manzano*, and *Francesca Chou*, for respondent.

## MEMORANDUM OPINION

LAUBER, *Judge*: This collection due process (CDP) case relates to petitioner's income tax liabilities for 2014–2017. The Internal Revenue Service (IRS or respondent) issued him a Notice of Determination sustaining a proposed levy, and he sought review in this Court. *See* § 6330(d)(1).[1] Following a remand for a supplemental hearing, petitioner executed an installment agreement (IA) that resolved the tax liabilities in question. The IRS Independent Office of Appeals (Appeals) accordingly issued him a Supplemental Notice of Determination concluding that the levy, although appropriate when issued, would not be sustained because collection action was no longer necessary.

---

[1] Unless otherwise indicated, statutory references are to the Internal Revenue Code, Title 26 U.S.C., in effect at all relevant times, regulation references are to the *Code of Federal Regulations*, Title 26 (Treas. Reg.), in effect at all relevant times, and Rule references are to the Tax Court Rules of Practice and Procedure. We round all monetary amounts to the nearest dollar.

**[\*2]**　Petitioner contends that he signed the IA "under protest," desiring to maintain a challenge to the penalties and interest determined by the IRS for 2014–2017.  Respondent has filed a Motion for Summary Judgment, contending that there are no disputes of material fact and that the settlement officer (SO) did not abuse her discretion in resolving the case as she did.  We agree and accordingly will grant the Motion.

*Background*

The following facts are based upon the pleadings, the parties' Motion papers, Declarations, and attached Exhibits, and the certified Administrative Record of the CDP proceeding.  *See* Rule 121(c).  Petitioner resided in New York when he petitioned this Court.  Absent stipulation to the contrary, appeal of this case would lie to the U.S. Court of Appeals for the Second Circuit, and we thus follow its precedent.  *See* § 7482(b)(1)(G); *Golsen v. Commissioner*, 54 T.C. 742, 757 (1970), *aff'd*, 445 F.2d 985 (10th Cir. 1971).

Petitioner filed delinquent Federal income tax returns for 2014 and 2015 on December 27, 2016.  He filed timely returns for 2016 and 2017.  He engaged Vilsaint St. Louis of Victory Tax Services to prepare all four returns.

The IRS commenced an examination of the four returns.  Petitioner participated in the examination, but his claimed deductions were disallowed because he failed to substantiate them.  Petitioner concedes that he "significantly overreported deductions" on his 2014–2017 returns and that "he failed to retain records and properly document his deductions."

On January 30, 2019, the IRS issued petitioner a timely Notice of Deficiency (Notice) for 2014–2017.  The Notice determined for each year a deficiency in tax and a 20% accuracy-related penalty under section 6662(a); for 2015 only, it determined an addition to tax under section 6651(a)(1) for failure to timely file.  The deficiencies totaled $47,560, the penalties totaled $9,512, and the addition to tax for 2015 was $657.

The Notice informed petitioner of his right to dispute these adjustments by petitioning this Court.  He failed to do so.  On August 12, 2019, the IRS accordingly assessed the liabilities as determined in the Notice.

On October 27, 2021, in an effort to collect petitioner's unpaid liabilities, the IRS issued him a Notice of Intent to Levy and Your

**[\*3]** Collection Due Process Right to a Hearing (levy notice). The liabilities appearing on the levy notice included the liabilities determined in the Notice, plus interest and additions to tax for failure to pay. *See* § 6651(a)(2). The interest shown on the levy notice totaled $5,802, and the section 6651(a)(2) additions to tax totaled $11,890.

The IRS mailed the levy notice to petitioner at his address in Davie, Florida (Florida address). He timely requested a CDP hearing by submitting Form 12153, Request for a Collection Due Process or Equivalent Hearing. He checked the box requesting a collection alternative in the form of an IA. He did not challenge his underlying tax liabilities for 2014–2017.[2]

On February 11, 2023, Appeals assigned the case to SO Aliza Cohen. She verified that petitioner's tax liabilities for 2014–2017 had been properly assessed and that all applicable legal and administrative requirements had been satisfied. SO Cohen sent petitioner a letter scheduling a teleconference for March 15, 2023, with a copy to his designated representative at the time, Sandra Wolf.

Unable to reach petitioner at the scheduled time, SO Cohen sent him a "last chance" letter, affording him two weeks to provide the financial information needed to consider his eligibility for a collection alternative. SO Cohen mailed this letter, like the previous one, to petitioner's Florida address, with a copy to Ms. Wolf. This letter was returned to SO Cohen with a New York City forwarding address (New York address). SO Cohen then sent another copy of the last chance letter to petitioner's New York address.

As of April 24, 2023, neither petitioner nor Ms. Wolf had responded to any of the SO's letters. On April 25, 2023, SO Cohen closed the CDP case and recorded her recommendation that the collection action be sustained. On June 29, 2023, the IRS issued petitioner a Notice of Determination sustaining the proposed levy. His Petition to this Court was mailed on September 2, 2023, and was filed by the Court on September 5, 2023. His Petition was thus untimely. *See* § 6330(d)(1).

---

[2] In October 2021 petitioner appears to have resided at 14400 SW 16th St., Davie, Florida 33325. The levy notice showed the correct street address but showed the ZIP Code number as "33325-5911008." This apparent anomaly did not prevent petitioner from receiving the levy notice or from timely requesting a CDP hearing. On the Form 12153 he listed his address as 14400 SW 16th St., *Bavie*, Florida 33325. This was evidently a typographical error; Bavie, Florida, does not exist.

[*4]     On December 8, 2023, respondent filed a Motion to Remand the case to Appeals for a supplemental hearing. The premise for the remand was petitioner's allegation that he did not receive certain communications from SO Cohen. Because it was "unclear which address Petitioner resided in or had access to for mailing purposes during [the relevant] time period," respondent urged that petitioner "be granted an opportunity to be heard in a [supplemental] hearing" so that "the Appeals Officer can consider collection alternatives." By Order served December 14, 2023, we granted respondent's Motion and remanded the case to Appeals.

Petitioner's case was again assigned to SO Cohen, who reminded petitioner that she could not consider a collection alternative unless he submitted Form 433–A, Collection Information Statement for Wage Earners and Self-Employed Individuals, with supporting financial information. By Orders served March 15 and May 17, 2024, we extended to July 5, 2024, the time within which we expected the parties to conduct the supplemental hearing. Petitioner eventually retained a new representative, who now serves as his counsel in this case.

The supplemental hearing was scheduled for July 2, 2024. On July 1, 2024, petitioner's counsel sent SO Cohen a packet of documents that included news items related to alleged fraud committed by Mr. St. Louis, who had prepared his 2014–2017 returns. *See supra* p. 2. The packet did not include a completed Form 433–A.

On July 2, 2024, SO Cohen conducted a telephone conference with petitioner's counsel. For the first time, petitioner urged that the penalties and interest determined for 2014–2017 should be abated. As support for abatement, petitioner alleged that Mr. St. Louis had been convicted of fraud in connection with a Paycheck Protection Program loan in 2021. SO Cohen replied that this alleged activity did not support abatement of interest or penalties for 2014–2017. She invited him to submit Form 843, Claim for Refund and Request for Abatement, but he never did so.

Petitioner requested additional time "to submit a reasonable cause abatement letter and to provide supporting documentation." SO Cohen granted that request and gave him two weeks, until July 16, to submit a letter justifying abatement. Petitioner conceded that he had no documentation to support a challenge to the tax deficiencies determined for 2014–2017.

**[*5]** Although petitioner had not submitted Form 433–A and had supplied no financial information, SO Cohen offered him an IA calling for payments of $1,645 per month. She gave him two weeks, until July 16, 2024, to decide whether to accept this offer. Petitioner asked that the proposed monthly payment be reduced to reflect abatement of interest and penalties, but SO Cohen explained that this was not possible unless he supplied additional justification.

On July 16 petitioner submitted a letter requesting a 50% abatement of the interest and penalties. He admitted that "mistakes were made" in filing his 2014–2017 returns but urged that these mistakes were "honest sins of omission only." He also asserted that he could not afford to pay $1,645 per month. SO Cohen replied that, if he wished to argue for a lower amount, "Form 433–A will be required for a determination to be made on [his] ability to make monthly payments." She gave him another 10 days, until July 26, 2024, to decide whether to accept her existing offer.

On August 20, 2024, petitioner's counsel informed SO Cohen that petitioner would accept her offer "under protest and with full reservation of rights," including "seeking a future abatement." SO Cohen accordingly directed petitioner to submit Form 433–D, Installment Agreement. On August 29, 2024, petitioner submitted an executed Form 433–D agreeing to an IA with a monthly payment of $1,637. (The record does not explain why this monthly payment is $8 lower than the monthly payment SO Cohen had initially offered.)

On September 4, 2024, Appeals issued petitioner a Supplemental Notice of Determination. It concluded that the proposed levy, though proper when made, would not be sustained because "the Appeals Officer proposed an Installment Agreement in the amount of $1,637.00 beginning November 02, 2024 and you agreed to the terms and conditions on August 29, 2024."

After the case was returned to this Court, respondent filed a Motion for Summary Judgment, contending that Appeals did not abuse its discretion in resolving the case as it did. Petitioner timely responded to the Motion.

**[\*6]** *Discussion*

I. *Jurisdiction*

Section 6330(d)(1) provides that a taxpayer "may, within 30 days of a determination under this section, petition the Tax Court for review of such determination." The Notice of Determination accordingly advised petitioner that he needed to file his Petition within 30 days of June 29, 2023, the date appearing on the Notice. The Petition was mailed on September 2, 2023, and was filed by the Court on September 5, 2023. It was thus mailed and filed more than a month late.

The 30-day filing deadline is a nonjurisdictional claim processing rule and is subject to equitable tolling. *See Boechler, P.C. v. Commissioner*, 142 S. Ct. 1493, 1501 (2022). A timeliness defense therefore can be forfeited if not raised. *See* Rule 39 ("A party shall set forth . . . any matter constituting an avoidance or affirmative defense . . . . A mere denial in a responsive pleading will not be sufficient to raise any such issue.").

Petitioner included with his Petition a document captioned "Memo for Tolling Time." He acknowledged that his Petition was being filed "beyond the normal 30-day time for filing appeal," but he urged that this deadline "is discretionary by this Court." He represented that he "did not receive a separate copy of the June 29th [notice of] determination by mail." In his Answer respondent agreed "that Petitioner's Petition was filed untimely" but "[n]either affirm[ed] nor denie[d] any legal argument."

Respondent does not contend, either in his Answer or in any other document, that this case should be dismissed because the Petition was untimely. Quite the contrary: Three months after the Petition was filed, respondent filed a Motion to Remand, affirmatively urging that the case be returned to Appeals to give petitioner the opportunity for a hearing. Under these circumstances, we consider respondent to have waived any affirmative defense or (alternatively) to have acquiesced implicitly in petitioner's argument that he qualifies for equitable tolling because he did not timely receive a copy of the Notice of Determination.

II. *Summary Judgment and Standard of Review*

The purpose of summary judgment is to expedite litigation and avoid unnecessary and time-consuming trials. *FPL Grp., Inc. & Subs. v. Commissioner*, 116 T.C. 73, 74 (2001). We may grant summary

**[\*7]** judgment when there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Rule 121(a)(2); *Sundstrand Corp. v. Commissioner*, 98 T.C. 518, 520 (1992), *aff'd*, 17 F.3d 965 (7th Cir. 1994). In deciding whether to grant summary judgment, we construe factual materials and inferences drawn from them in the light most favorable to the nonmoving party. *Sundstrand Corp.*, 98 T.C. at 520. However, where the moving party makes and properly supports a motion for summary judgment, "the nonmovant may not rest on the allegations or denials in that party's pleading" but must set forth specific facts, by affidavit or otherwise, showing that there is a genuine dispute for trial. Rule 121(d). Finding that there exist no genuine disputes of material fact, we conclude that summary adjudication is appropriate.

Section 6330(d)(1) does not prescribe the standard of review that this Court should apply in reviewing an IRS administrative determination in a CDP case. The general parameters for such review are marked out by our precedents. Where the taxpayer's underlying tax liability is properly at issue, we review the IRS's determination de novo. *Sego v. Commissioner*, 114 T.C. 604, 610 (2000); *Goza v. Commissioner*, 114 T.C. 176, 181–82 (2000). Where the taxpayer's underlying liability is not properly in dispute, we review the IRS's determination for abuse of discretion only. *Goza*, 114 T.C. at 182.

III.   *Underlying Tax Liabilities*

While not disputing the deficiencies, petitioner challenges the accuracy-related penalties and interest that the IRS determined for 2014–2017. During the supplemental hearing he urged that at least 50% of the penalties and interest should be abated, and he renews that argument in this Court. "[A] request for an abatement of interest and penalty pursuant to section 6404(e) and (f) [constitutes] a challenge to the existence of an underlying liability." *Salahuddin v. Commissioner*, T.C. Memo. 2012-141, 103 T.C.M. (CCH) 1764, 1767; *see Dick v. Commissioner*, T.C. Memo. 2024-101, at \*4–5 ("A request for abatement of additions to tax and interest constitutes a challenge to a taxpayer's underlying liability."); *Dykstra v. Commissioner*, T.C. Memo. 2017-156, 114 T.C.M. (CCH) 183, 187; *Brennan v. Commissioner*, T.C. Memo. 2013-123, 105 T.C.M. (CCH) 1724, 1727.

A taxpayer may challenge his underlying liability at a CDP hearing only if he did not receive a statutory notice of deficiency or did not otherwise have a prior opportunity to dispute the liability. *See*

**[\*8]** § 6330(c)(2)(B); *Montgomery v. Commissioner*, 122 T.C. 1, 9 (2004). Petitioner had a prior opportunity to dispute the accuracy-related penalties for 2014–2017 when he received the Notice. After an examination in which he participated, the IRS mailed that Notice to his last known address on January 30, 2019.

The Notice was issued within 3 years of December 27, 2016, the date on which petitioner filed his delinquent 2014 and 2015 returns, and within 3 years of the dates on which he filed his 2016 and 2017 returns. *See* § 6501(a). The Notice was thus timely issued and valid.[3] Because petitioner failed to petition this Court in response to the Notice, he was precluded from challenging the penalties during the CDP proceeding and cannot advance that challenge here. *See Thompson v. Commissioner*, 140 T.C. 173, 178 (2013).[4]

Although petitioner had a prior opportunity to challenge the accuracy-related penalties, he did not have a prior opportunity to dispute the interest or the section 6651(a)(2) additions to tax. Those amounts were not determined in the Notice but were communicated to him in the levy notice after he failed to petition this Court. Nothing in the record indicates that he had an earlier opportunity to contest these liabilities.

---

[3] Petitioner appears to contend that his 2014–2017 liabilities were not timely assessed or that the period of limitations on collection had expired. Neither argument is correct. The IRS assessed the tax on August 12, 2019, shortly after petitioner failed to petition this Court. The assessments were thus timely under sections 6501(a) and 6503(a)(1) (providing that, after the mailing of a notice of deficiency, the running of the assessment period of limitations is suspended during the period in which the IRS is prohibited from making an assessment and for 60 days thereafter). The period of limitations on collection, which runs for 10 years after the date of assessment, § 6502(a)(1), has not yet expired.

[4] Even if petitioner were entitled to challenge his liability for the penalties, he supplied during the CDP proceeding no evidence that the penalties were "excessive in amount," were "erroneously or illegally assessed," or were "attributable to erroneous written advice" from the IRS. *See* § 6404(a)(1), (3), (f) (authorizing abatement on these grounds). Instead, petitioner urged the SO to abate 50% of the penalties "out of fundamental fairness" on the theory that he had been victimized by an unscrupulous return preparer who had reported bogus deductions on his 2014–2017 returns. But taxpayers have a duty to review their returns for accuracy before the returns are filed, and the duty of filing accurate returns cannot be avoided by placing responsibility on a tax return preparer. *See Metra Chem Corp. v. Commissioner*, 88 T.C. 654, 662 (1987). Had petitioner discharged this duty, he would have seen (as he acknowledges in his Response) that the deductions were "significantly overreported."

**[\*9]** To preserve an underlying tax liability challenge in this Court, however, a taxpayer must properly raise that challenge during the CDP hearing. *Thompson*, 140 T.C. at 178; *see Giamelli v. Commissioner*, 129 T.C. 107, 113 (2007). "An issue is not properly raised if the taxpayer fails . . . to present to Appeals any evidence with respect to that issue after being given a reasonable opportunity to [do so]." Treas. Reg. § 301.6330-1(f)(2), Q&A-F3; *see Giamelli*, 129 T.C. at 112–16. In other words, the taxpayer must explain what he believes his correct tax liability to be and supply the SO with some evidence to support that position. *See Giamelli*, 129 T.C. at 112–16; *Fleming v. Commissioner*, T.C. Memo. 2017-155, 114 T.C.M. (CCH) 180, 182 (citing *McRae v. Commissioner*, T.C. Memo. 2015-132, 110 T.C.M. (CCH) 89, 91); Treas. Reg. § 301.6330-1(f)(2), Q&A-F3.

Section 6404(e) authorizes the Secretary to abate interest attributable to unreasonable errors or delays by the IRS in performing a ministerial or managerial act. Although petitioner requested abatement of interest during the CDP proceeding, he supplied the SO with no evidence that the IRS could be charged with "unreasonable error[s] or delay[s]" in the processing or examination of his returns. *See* § 6404(e)(1)(A). Indeed, in his Response to the Motion, he concedes that his argument for abatement—which he grounds on "fundamental fairness"—"does not fit neatly into the above [section 6404] categories, as they clearly do not." *See Day v. Commissioner*, T.C. Memo. 2014-215, 108 T.C.M. (CCH) 452, 454 (holding that a taxpayer did not properly raise the issue of interest abatement during a CDP hearing where he submitted neither a Form 843 nor any information justifying abatement), *aff'd*, 692 F. App'x 897 (9th Cir. 2017).

Finally, petitioner did not challenge, at any time during the CDP proceeding, the additions to tax for failure to timely pay. Nor did he supply any evidence that his failure to pay the tax shown on his returns was "due to reasonable cause and not due to willful neglect." *See* § 6651(a)(2). Rather, during the supplemental hearing he confined his underlying liability challenge to the accuracy-related penalties and the assessed interest. *See Brennan*, 105 T.C.M. (CCH) at 1727 (declining to consider underlying liability challenge where taxpayer "did not raise the issue of abating the additions to tax or [his] 'reasonable cause' defense before or during the CDP hearing"). We accordingly review the SO's determinations for abuse of discretion only. *See* § 6330(c)(3); *Goza*, 114 T.C. at 182.

**[\*10]** IV.    *Abuse of Discretion*

Abuse of discretion exists when a determination is arbitrary, capricious, or without sound basis in fact or law. *See Murphy v. Commissioner,* 125 T.C. 301, 320 (2005), *aff'd,* 469 F.3d 27 (1st Cir. 2006). In deciding whether the SO abused her discretion, we consider whether she (1) properly verified that the requirements of applicable law or administrative procedure were met, (2) considered relevant issues petitioner raised, and (3) considered "whether any proposed collection action balances the need for the efficient collection of taxes with the legitimate concern of [petitioner] that any collection action be no more intrusive than necessary." *See* § 6330(c)(3). Our review of the record establishes that SO Cohen properly discharged all her responsibilities under these provisions.

A.    *Verification*

Section 6330(c)(1) requires the SO to "obtain verification . . . that the requirements of any applicable law or administrative procedure have been met." SO Cohen confirmed that all such requirements were satisfied. Specifically, she verified that notice and demand for payment were made to petitioner within 60 days of the assessment. She secured a copy of the Notice and of U.S. Postal Service Form 3877, Firm Mailing Book for Accountable Mail, verifying that the Notice was sent to petitioner's last known address. Petitioner did not raise before the SO, and he does not raise in this Court, any challenge to the proper mailing of the Notice. To the contrary, he concedes liability for the deficiencies for 2014–2017 and seeks only abatement of interest and penalties. In any event, the Notice was properly mailed to his last known address and was timely. *See supra* p. 8 & note 3.

Petitioner contends in his Response that the IRS failed to secure timely supervisory approval of the penalties determined in the Notice. *See* § 6751(b)(1). Petitioner did not advance this argument during the original or supplemental CDP hearing. Even if he had done so, it would have been an impermissible challenge to his underlying liability for the penalties. *See supra* pp. 7–8. In any event the examination file shows that the revenue agent's group manager, by signing the 30-day letter, approved assertion of the penalties. The approval was thus timely under Second Circuit and Tax Court precedent, as well as under the Treasury regulations applicable to penalties assessed after December 31, 2024. *See Chai v. Commissioner*, 851 F.3d 190, 221 (2d Cir. 2017), *aff'g in part, rev'g in part* T.C. Memo. 2015-42; *Frost v. Commissioner*, 154

**[\*11]** T.C. 23, 32 (2020) (holding that supervisory approval must be secured "before the first formal communication to the taxpayer of penalties").

### B.    *Collection Alternatives*

Section 6159(a) authorizes the IRS to enter into a written agreement allowing a taxpayer to pay a tax liability in installments if it concludes that the agreement "will facilitate full or partial collection of such liability."  The decision to accept or reject an IA lies within the Commissioner's discretion.  *See Thompson*, 140 T.C. at 179.

The SO generously offered petitioner an IA even though he had supplied no financial information and had neglected to submit a Form 433–A.  Petitioner ultimately accepted her offer by executing a Form 433–D, agreeing to an IA with a monthly payment of $1,637.  Because petitioner's execution of the IA eliminated the need for current collection action with respect to his 2014–2017 liabilities, the SO properly concluded that the proposed levy, while appropriate when initially issued, would not be sustained.

### C.    *Balancing Analysis*

Petitioner has not alleged that the SO failed to consider "whether any proposed collection action balances the need for the efficient collection of taxes with [petitioner's] legitimate concern . . . that any collection action be no more intrusive than necessary."  *See* § 6330(c)(3)(C).  He has thus conceded this issue.  In any event, because Appeals did not sustain the collection action, extensive discussion of this factor was unnecessary.  For all these reasons, we conclude that Appeals did not abuse its discretion in resolving the case as it did.

To reflect the foregoing,

*An appropriate order and decision will be entered.*